FINK and another, Appellants, v. REITZ and another, Respondents.

*September 9—October 5, 1965.*

For the appellants there was a brief by *John T. Pryor* and *Charles Saggio,* both of Milwaukee, and oral argument by *Mr. Saggio.*

For the respondents there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Edmund W. Powell* of counsel, all of Milwaukee, and oral argument by *Edmund W. Powell.*

FAIRCHILD, J. Plaintiffs assert there are six issues, which we discuss as follows:

1. *New trial in the interest of justice.* There were two versions of the collision. The gist of Mrs. Fink's testimony is that she made a right turn from the westernmost lane of traffic; that she had traveled in that lane for some distance; that as she approached Abbott street she gradually slowed down, activated her directional signal for a right turn, flashed her brake lights by pumping her brakes, and gave a hand signal for a right turn. She testified that after the collision Reitz told her he was sorry he did not see her, but the sun blinded him.

Reitz's version was, in substance, that when he first saw the Fink car, it was ahead of him in the westernmost lane, the same as he; that the cars were 100 feet apart; that about a half block before Abbott street, he observed a "nondescript, a dangling"-type of arm signal, and the Fink car turned to the center lane and decreased its speed, all of which led him to conclude that Mrs. Fink was preparing to make a left turn; that he took his foot from the accelerator; that just at Abbott street, the Fink car swerved sharply to the right; that Reitz turned to the right, applied his brakes, and struck the right rear of the Fink car when his own car was moving very slowly. Reitz testified he had watched the rear of the Fink car and saw no directional signals nor brake lights. A passenger in his car corroborated his testimony in several respects. No one asked him whether he made the statement attributed to him by Mrs. Fink.

The jury did not exonerate Reitz, but clearly did not believe Mrs. Fink. If the facts were as Reitz related them, he had some basis for concluding that Mrs. Fink was preparing to make a left turn, although Abbott street did not extend east of Highway 100, and she could not have made a left turn until several hundred feet farther on.

The evidence supports the finding that both were causally negligent. Reitz's testimony was not incredible. Comparison of negligence is peculiarly within the province of the jury.[1] We cannot say that the apportionment in this case is not supported under any reasonable view of the evidence. Neither does it appear probable that justice has miscarried, so as to cause us to reverse in our discretion under sec. 251.09, Stats.

2. *Perversity of verdict allegedly shown by findings as to damages.* The jury determined that fair allowances to Mrs. Fink would be as follows: $1,000 for loss of earnings to date; $2,500 for pain and suffering to date; $3,000 for pain, suffering, and disability in the future. A zero was inserted as an answer to the question on damages to Mr. Fink for loss of society and companionship.

Plaintiffs contend that the last answer is perverse because there was testimony that Mrs. Fink was in the hospital or confined at home for several weeks, did no housework for about one year, and had to stay in traction during her sleep. They contend that wage loss of $2,500 was proved; and that the $5,500 awarded for suffering and disability was inadequate.

Defendants contend that the work schedules followed by the Finks before the accident were such that they spent very little time together, and that there are reasonable interpretations of the testimony under which the other damages found were adequate.

---

[1] *Niedbalski v. Cuchna* (1961), 13 Wis. (2d) 308, 318, 108 N. W. (2d) 576.

In view of the determination of Judge LANDRY that the verdict was not perverse, we find it unnecessary to resolve the question whether the damages were or were not inadequate. Assuming that they were, inadequacy of damage allowances does not compel a conclusion that the answering of liability questions in a manner unfavorable to plaintiffs was perverse.

"The rule is that where a jury has answered other questions so as to determine that there is no liability on the part of the defendant, which finding is supported by credible evidence, the denial of damages or granting of inadequate damages to the plaintiff does not necessarily show prejudice or render the verdict perverse." [2]

In passing on motions after verdict, Judge LANDRY indicated that he did not consider the damages inadequate, but that in any event the verdict was not perverse.

3. *Separate questions as to particular aspects of negligence.* Plaintiffs made a timely request for a special verdict and the court submitted a special verdict to the jury. The questions as to negligence of each party simply inquired whether that party was negligent with respect to the manner in which he operated his automobile. Other questions inquired as to causation. The questions were not subdivided so as to inquire as to the particular respects in which the automobile was negligently operated. Plaintiffs argue that the form of special verdict submitted by the court (often referred to as the "ultimate-fact verdict") does not comply with sec. 270.27, Stats. In making this argument, plaintiffs overlook the sentence in that section: "In cases founded upon negligence, the court may submit separate questions as to the negligence of each party, and whether such negligence was a cause without submitting separately any particular

[2] *Sell v. Milwaukee Automobile Ins. Co.* (1962), 17 Wis. (2d) 510, 519, 117 N. W. (2d) 719. Also see *Dickman v. Schaeffer* (1960), 10 Wis. (2d) 610, 617, 103 N. W. (2d) 922.

respect in which the party was allegedly negligent." This language was placed in the section by our order [3] pursuant to our rule-making power, and previous cases holding that there must be separate questions for particular aspects of negligence are no longer in point. We find no abuse of discretion in the form of special verdict submitted by the court in this case.

4. *Alleged error in instructions.* Plaintiffs suggest that the giving and repetition of certain instructions gave undue emphasis to the version of the facts favorable to defendants.

Plaintiffs refer to "14 instructions against forward vehicle and only 3 against trailing vehicle." They doubtless refer to the court's statement as to duties of drivers, some of which, under one or the other version of the facts, described the duties of a driver in Mrs. Fink's position, and others of which described the duties of a driver in Reitz's position. We have carefully read the instructions but were unable to find as many as "14 instructions" falling in the former class, and did not find undue emphasis or prejudicial error.

Judge LANDRY said, before giving the instructions on duties of drivers:

"In answering these questions, you will weigh and consider the credible evidence, including the reasonable inferences from the evidence, bearing on these inquiries, in the light of the instructions I will now give you pertaining to specific duties, statutory rules of the road, and the rules of law that are to be applied by you in determining what your answers to these questions should be."

He later cautioned the jury against concluding from the giving of such instructions that the court had determined that anybody was negligent.

---

[3] In the Matter of the Revision of Rules of Pleading, Practice and Procedure in Judicial Proceedings in the Courts of Wisconsin (1961), 11 Wis. (2d) v.

Plaintiffs point out that the statements as to duty were later repeated. The jury asked the court to "reread the statute about the cause of negligence." The court repeated certain general instructions on causation. The foreman later asked to have the "statute read regarding the cause of the accident." Judge LANDRY explained that the statutes pertained to specific duties of motorists and asked if the jury wanted those duties repeated. The foreman answered "Yes" and Judge LANDRY repeated that portion of the instructions. We find no prejudicial error.

Plaintiffs object to the inclusion of an emergency instruction. If, however, the jury believed and accepted Reitz's version of the facts, it could have found that he was confronted by an emergency to which no negligence of his contributed, and the giving of the instruction was proper. In any event, the jury found that Reitz was negligent.

5. *Alleged errors with respect to evidentiary matters.* Plaintiffs' chief complaint here goes to the propriety of a hypothetical question put to a medical expert. It is unnecessary to consider the claim in detail because at this stage judicial errors, if any, affecting damages are immaterial. The doctor was asked to assume that the car which the injured person was driving "stopped after the collision within a distance of five to ten feet." It is claimed that this statement is inaccurate because it did not suggest that the car lurched. Upon checking the record, we can find no inaccuracy of any consequence.

Several other complaints are made with respect to questions the court permitted defendants to ask or did not permit plaintiffs to ask, but most of these questions related to injuries and error in that respect, if any, would be immaterial. We have examined each other claim, but find no prejudicial error, nor reason to extend this opinion by further discussion.

6. *Alleged prejudicial conduct and remarks by the trial court.* Plaintiffs make reference to five statements or rulings made by the court, and argue that the court's conduct and remarks influenced the outcome of the verdict. We have carefully examined and considered each of the matters referred to and find nothing to suggest impropriety, prejudice, or any implication to the jury of an opinion on the part of the court as to the verdict which the jury ought to reach. The claims are so wholly devoid of merit that a more-detailed statement is unnecessary.

*By the Court.*—Judgment affirmed.