BURLISON, Appellant, v. JANSSEN and others, Respondents.

*March 2—April 12, 1966.*

498

For the appellant there were briefs by *Antaramian & Antaramian* and *Richard B. Antaramian,* and *Heide, Sheldon, Hartley & Thom, W. A. Sheldon,* and *S. Michael Wilk,* all of Kenosha, and oral argument by *Richard B. Antaramian.*

For the respondents there was a brief by *Eastman, Faller & Pleger* of Marinette, and oral argument by *Ernest W. Pleger.*

BEILFUSS, J. The issues involved on this appeal are whether there is any evidence to support the jury finding of negligence in management and control on the part of Burlison, whether the trial court erred in denying respondents' motion to reduce the damages for personal injuries, and whether the trial court erred in denying respondents' motion to reduce the damages for lost wages to none.

The rules invoked by this court in reviewing jury findings are clear and not disputed.

"The rule is well established that a verdict or a finding of a jury will not be set aside or disturbed, 'if there is any credible evidence which under any reasonable view fairly admits of an inference that supports the jury's finding.' *Van Galder v. Snyder* (1948), 254 Wis. 120, 123, 35 N. W. (2d) 187. 'The familiar rule, often declared by this court, that where there is credible evidence to support a finding of a jury we may not disturb it, needs no citation of authorities.' *Mossak v. Pfost* (1950), 258 Wis. 73, 75, 44 N. W. (2d) 922. It should be further pointed out, 'on review this court must accept the credible evidence most favorable to sustain the verdict.' *Dickman v. Schaeffer* [(1960), 10 Wis. (2d) 610, 613, 103 N. W. (2d) 922]." [1] (Footnote omitted.)

In looking at the credible evidence most favorable to respondent Janssen, several theories which would support a finding of negligence on Burlison's part suggest themselves. The jury could have concluded that Burlison did not signal his right turn. Both Burlison and Erickson testified that Burlison signaled. Janssen said he saw no

[1] *Bleyer v. Gross* (1963), 19 Wis. (2d) 305, 307, 120 N. W. (2d) 156. See also *Zweifel v. Milwaukee Automobile Mut. Ins. Co.* (1965), 28 Wis. (2d) 249, 254, 137 N. W. (2d) 6, and *Guinther v. Schucht* (1965), 26 Wis. (2d) 97, 99, 131 N. W. (2d) 861, for more recent cases reciting these rules.

signal. The jury could have resolved the conflict in favor of Janssen. Credibility of witnesses is peculiarly for the jury. *Baker v. Northwestern National Casualty Co.* (1963), 22 Wis. (2d) 77, 86, 125 N. W. (2d) 370; *Hibner v. Lindauer* (1963), 18 Wis. (2d) 451, 455, 118 N. W. (2d) 873; *Anderson v. Deerwester* (1960), 9 Wis. (2d) 428, 435, 101 N. W. (2d) 640.

Sec. 346.34 (1), Stats.,[2] requires that a proper turn signal be given before any deviation from a course of travel may be made. Thus, if the jury believed Janssen, as against Erickson and Burlison, that Burlison did not signal his intention to turn, negligence in that respect would be properly based.

The jury might also have concluded that Burlison's actions in turning and just prior to turning constituted negligence. There is evidence in the record from which the jury could have concluded that Burlison braked, sped up, braked, sped up, and then braked very hard as he turned right unexpectedly at a high rate of speed. Such conduct could be considered to be unreasonable and imprudent under the circumstances.

Certainly, this conduct combined with the failure to signal, as the jury was entitled to find, is a sufficient basis for a finding of negligence. Burlison's own observations and admissions indicate that he was acutely aware of the impending danger from the rear. Under these circumstances the jury could have determined that the

---

[2] *"Turning.* No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in s. 346.31, or turn a vehicle to enter a private road or driveway unless the vehicle is in proper position on the roadway as required in s. 346.32, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. In the event any other traffic may be affected by such movement, no person shall so turn any vehicle without giving an appropriate signal in the manner provided in s. 346.35. Such signal shall be given continuously during not less than the last 100 feet traveled by the vehicle before turning."

right turn could not be made with reasonable safety as required by the statute.[3]

Respondent has also suggested that it was negligence for Burlison not to have either pulled onto the right shoulder or to have sped up and continued moving straight ahead since he was so thoroughly aware of the dangerous situation developing.

While the jury could have found Burlison free from negligence, we cannot say that there is no credible evidence to support the jury's finding. The jury had a right to believe Janssen's version of the accident, which it must have done in most respects, and this court will not interfere with its findings.

Burlison argues that the driver of a preceding vehicle owes no duty whatsoever to a following driver, since that driver is duty bound to have his vehicle under control at all times. However, it is clear that a preceding driver must properly signal his intentions to deviate from his lane of travel and must at all times use the roadway in the usual manner with proper regard for the welfare of all other users of the highway, whether driver, passenger, or pedestrian.[4] Burlison did have a duty toward Janssen to use the roadway in the usual manner, and there is credible evidence in the record from which the jury could have found a breach of that duty, thus constituting negligence.

In *Fink v. Reitz* (1965), 28 Wis. (2d) 319, 137 N. W. (2d) 21, we recently upheld a jury verdict, on somewhat

[3] Sec. 346.34 (1), Stats., *supra*, footnote 2.

[4] *Thoresen v. Grything* (1953), 264 Wis. 487, 59 N. W. (2d) 682, appears at first blush to impose no duty toward a following vehicle, but that case actually recognizes the duties to use the road in the usual manner, to signal before deviating, and not to stop suddenly without signal when there is time to signal. See *Tesch v. Wisconsin Public Service Corp.* (1957), 2 Wis. (2d) 131, 136, 85 N. W. (2d) 762. See also Campbell, Wisconsin Law Governing Automobile Accidents—Part I, 1962 Wisconsin Law Review, 240, 241.

comparable facts, finding the preceding driver 75 percent negligent and the following driver 25 percent negligent. In that case there were two conflicting stories. Plaintiff said she properly signaled a right turn, braked properly, and turned from the proper lane before being struck by the following car. Defendant testified that plaintiff gave a nondescript, dangling hand signal and moved into the center lane, which led him to believe she was going to turn left. Then she turned right suddenly. The jury was entitled to believe defendant's version and assess the percentages of negligence as it did.

Since apportionment of negligence is for the jury, we will not interfere with that determination unless the apportionment is grossly disproportionate.[5]

" 'The trial court, which had the discretion to grant a new trial, considered the verdict fair, and there is nothing in the record to indicate that the percentages of negligence fixed by the jury are so grossly disproportionate as to justify this court in substituting its judgment for that of the jury and the trial court.' " [6]

As there, the jury's findings here must stand.

Respondents have raised the issue of damages by notice of review. They argue that Burlison did not sufficiently prove any damages for wage loss and that the award for personal injuries is excessive.

A plaintiff may recover damages for lost wages or lost time, but proof must be to a reasonable certainty. *Moritz v. Allied American Mut. Fire Ins. Co.* (1965), 27 Wis. (2d) 13, 133 N. W. (2d) 235.

Burlison kept no records of the days and hours which he could not work. Aside from the three months immedi-

---

[5] *Fink v. Reitz* (1965), 28 Wis. (2d) 319, 322, 137 N. W. (2d) 21; *Niedbalski v. Cuchna* (1961), 13 Wis. (2d) 308, 318, 108 N. W. (2d) 576.

[6] *Milwaukee & Suburban Transport Corp. v. Royal Transit Co.* (1966), 29 Wis. (2d) 620, 631, 139 N. W. (2d) 595, quoting from *Jankovich v. Arens* (1952), 262 Wis. 210, 215, 54 N. W. (2d) 909.

ately subsequent to the accident in which he could not work, the periods when he could not work were estimated. Burlison testified that during the first six months of 1962 he missed about one month in two. Thereafter he could not work approximately one month in six. He testified that his income was $600 per month. He values his services at $3.80 per hour.

Burlison is a carpenter and a contractor. He is accustomed to having at least several men in his employ at all times. He testified that it was necessary for him to hire an additional employee in 1962, who remains on the payroll today, to do the work he would have ordinarily done himself. While Burlison produced no payroll records, he testified that the worker was paid at least $4.35 per hour in 1962 and at least $4.55 per hour since 1963. This is an expense of nearly $9,000 per year.

Burlison himself has done more administrative work, including bookkeeping, since the accident. He testified that if he were able to do more physical labor, as he was accustomed to doing, he would have had to hire somebody to do the bookkeeping he now does. He also testified that the business has expanded since 1962. Thus, the extra man is probably not spending full time doing what Burlison would ordinarily have done, but is likely spending considerable time on new work.

Upon this evidence the jury awarded Burlison $4,500 for lost wages to the time of trial—about three and one-half years after the accident.

This is not a simple case of wage loss or time loss, as respondents contend. Here, Burlison was a carpenter and contractor. He operated his own business and contributed capital, labor, and management supervision. He did not receive a stated salary. He withdrew such amounts from the business as were necessary to maintain himself and his family. He attempted to withdraw a bare minimum and leave as much capital in the business as possible. He apparently did not keep records which reflect informative detail.

Respondents did not contradict any of the evidence given by Burlison. Under the peculiar circumstances here we believe that the jury was entitled to award appellant $4,500. Even if we consider Burlison's estimates of time loss after the first three months subsequent to the accident as insufficient proof, not being to a reasonable certainty, he has still shown a wage loss of $1,800 and out-of-pocket expenses of over $30,000, all attributable to the accident.

While the proof is not documented, it does stand uncontradicted. Certainly, the reasonable cost of a bookkeeper and the amount of salary paid to the extra man attributable to work on new projects would have to be subtracted from the wage loss and out-of-pocket expense. Respondents did not attempt to prove these offsets but maintain only that appellant has not proved any wage loss to a reasonable certainty.

Burlison might well have suffered a substantial loss which he did not prove, but this is not to say that he has not proved to a reasonable certainty the $4,500 found by the jury. From the credible evidence offered by Burlison, and reasonable inferences drawn therefrom, the jury could conclude that he has suffered a financial loss of earning capacity in the amount of $4,500 to the date of trial.

The respondents also maintain that the award of $13,500 for personal injuries is excessive.

Burlison suffered a whiplash injury and lower back strain. The accident occurred on November 20, 1961. On the following day he was stiff and sore. He was able to go deer hunting on November 25th, but on the following day he experienced difficulty getting in and out of the car. His neck hurt when he moved it. He did not go to work on Monday, November 27th. He saw a physician on November 28th, and was hospitalized on December 12th for four days. Burlison continued to experience pain in his neck and back which prevented him from

working on various occasions. He was restricted in bending and lifting.

Dr. Sattler was consulted on February 5, 1962, and has treated Burlison periodically since then. His reports indicate that the pain and immobility would vary from week to week. It became so bad in April, 1964, that Burlison was hospitalized for five days, and Dr. Sattler reported him totally disabled.

Dr. Sattler testified that Burlison suffered a 10 percent disability of the neck and moderate chronic lumbosacral strain which are permanent. Although Burlison experiences periods when his back is good, he has been totally disabled also. Dr. Sattler was of the opinion that his condition had actually worsened over the two and one-half years he treated him. Burlison was thirty-nine years old at the time of trial and has a considerable life expectancy.

Dr. Regan saw Burlison twice—on November 18, 1963, and on March 26, 1965. His opinion was that Burlison "had most likely sustained a soft tissue strain and I felt that he had been treated and that recovery had taken place." He also found nothing which would lead to residual disability.

On the basis of this evidence the jury awarded Burlison $13,500 for permanent injuries.

This court views the evidence on damages in the light most favorable to the plaintiff. *Moritz v. Allied American Mut. Fire Ins. Co., supra,* at page 22; *Olson v. Siordia* (1964), 25 Wis. (2d) 274, 284, 130 N. W. (2d) 827. Courts are reluctant to interfere with jury determinations of damages. *Moritz v. Allied American Mut. Fire Ins. Co., supra,* at page 22; 15 Am. Jur., Damages, p. 621, sec. 205.

While comparison with other verdicts is imperfect at best, we note that we have approved a verdict of $14,000 for not entirely dissimilar injuries in *Lother v. Keller,* ante, p. 403, 141 N. W. (2d) 181.

Under the evidence most favorable to Burlison we cannot say that the award of $13,500 is so high as to be deemed excessive, and thus warranting reduction.

*By the Court.*—Judgment affirmed.