FISCHER (Genevieve), Appellant, v. FISCHER (Erick) and others, Respondents.*

*May 11—June 7, 1966.*

---

* Motion for rehearing denied, with costs, on July 27, 1966.

294

298

For the appellant there were briefs by *Kaftan, Kaftan & Kaftan* of Green Bay, and oral argument by *Fred F. Kaftan.*

For the respondents Erick Fischer and Hartford Accident & Indemnity Company there was a brief by *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay, and oral argument by *Fred Trowbridge, Jr.*

For the respondents James W. Bopray and Hardware Mutual Casualty Company there was a brief by *Cornelisen, Denissen, Kranzush & Kuehn,* and oral argument by *David J. Condon,* all of Green Bay.

For the respondents Roger C. Zwieg and State Farm Mutual Automobile Insurance Company there was a brief by *Everson, Whitney, O'Melia, Everson & Brehm* of Green Bay, and oral argument by *John C. Whitney.*

HEFFERNAN, J.

*Did the court err in refusing to let plain-
tiff's counsel suggest to jury that $30,000
be awarded for personal injuries?*

The statement in controversy was uttered in the course
of the plaintiff's argument to the jury. The reporter did
not take notes until an objection was made, and therefore
the initial statement objected to is not of record. How-
ever, it is clearly apparent from the record that the plain-
tiff's counsel suggested that the jury might appropriately
award the plaintiff the sum of $30,000 for her past and
future personal injuries. Plaintiff's attorney then, in
apparent explanation of what had been objected to, re-
peated his suggestion of an award of $30,000, and this
language was again objected to, and the court sustained
the objection, using the following language:

"Court: Objection sustained. Don't comment any more
figures, Mr. Kaftan.
"Mr. Kaftan: Pardon?
"Court: I said please refrain from commenting any
further on the figures."

Subsequently, during the course of oral argument, the
following statement was made:

"Mr. Kaftan: I have commented as to the figure, ladies
and gentlemen, the figure that I recommended to you."

At this point, counsel for the three defendants joined
in an objection to this statement and moved for a mis-
trial. The court denied the motion, stating:

"Court: . . . Mr. Kaftan, please refrain. For the rec-
ord, I state at this time, please pass on to some other
phase. You have made your statement. I don't want you
to reiterate or repeat it.
"Mr. Kaftan: The only statement that I want to make
. . .
"Court: I don't want any colloquy from counsel. The
court has admonished you, period."

We conclude that the court erred in refusing to allow counsel's comments to the jury. The learned trial judge took the position that the $30,000 figure should not be mentioned because he concluded that a verdict in that amount could not be sustained. In the trial judge's opinion he indicated that he felt that figure was unreasonable in the absence of any testimony related to permanent scarring to a reasonable medical certainty or probability. This court, however, has heretofore concluded that the trial judge's conception of what is reasonable should not be the test when an award figure is suggested to the jury. In *Affett v. Milwaukee & Suburban Transport Corp.* (1960), 11 Wis. (2d) 604, 614, 106 N. W. (2d) 274, we held:

"Counsel for both the plaintiff and the defendant may make an *argumentative* suggestion in summation from the evidence of a lump sum dollar amount for pain and suffering which *they* believe the evidence will fairly and reasonably support." (Emphasis supplied.)

We subsequently, in *Walker v. Baker* (1961), 13 Wis. (2d) 637, 651, 109 N. W. (2d) 499, have followed the "lump-sum" rule approved in *Affett.* Later, in *Halsted v. Kosnar* (1963), 18 Wis. (2d) 348, 352, 118 N. W. (2d) 864, we emphasized that:

"The test as to what is permissible by way of counsel's argument in presenting his lump-sum figure for pain and suffering must be a subjective one. If the attorney argues to the jury that a certain figure is sustained by the evidence, neither his good faith nor his ethics should be subjected to posttrial challenge. We reject the learned trial judge's suggestion that the request for a figure larger or lower than the court would later sustain constitutes a violation of the attorney's oath. The measurement of pain and suffering is so patently thorny that the yardstick used by counsel should not be condemned merely because the court considers it too long or too short."

We also pointed out in *Halsted, supra,* page 352, that, under some circumstances, the plaintiffs' lawyers sug-

gest absurdly large or "boxcar" damages, while some defense attorneys suggest ludicrously inadequate compensation for an injured person. We therein expressed our faith in the jury system and the ability of jurors to discern absurdities when they are presented to them. We stated that:

". . . excessive demands, either too high or too low, will normally backfire. In those instances in which jurors reach a conclusion which is beyond the range of reasonableness, the law affords relief—both in the trial court and on appeal."

We reiterate our faith in the jury's ability to discern or reject extremes in the appraisal of damages, and we conclude that if trial counsel are permitted to express their own subjective advocate's appraisal of damages that demands completely unsupported by evidence will be rejected by the jury. The probability of a "backfire" in the event of an unreasonable demand is likely to make this phase of trial advocacy self-policing.

We have not overlooked the fact that the trial judge in concluding that the $30,000 figure was beyond reason (though this is not the test of the right to argue the figure) stated that it did not appear from the record that there was medical testimony that the scars would be permanent to a reasonable medical certainty or probability. The testimony, however, of Dr. Hoops made it quite clear that although improvement could be expected some scarring would be of a permanent nature. He stated, "I can't eliminate the scars. There is no way of doing that . . ." As we stated in *Casimere v. Herman* (1965), 28 Wis. (2d) 437, 445, 137 N. W. (2d) 73, though the test is "medical certainty," no particular words of art are necessary to show that the physician's prediction is more than a mere possibility or conjecture. In the case before us, Doctor Hoops was speaking as a qualified expert plastic surgeon, and it would appear that his statement quoted above might well have been the basis upon

which a jury could reasonably determine that the plaintiff's scarring in some degree would be permanent. The record indicates the trial judge quite vehemently put an end to counsel's attempts to state his lump-sum figure. He used the language:

"You have made your statement. I don't want you to reiterate or repeat it."

Later, the court said:

"I don't want any colloquy from counsel. The court has admonished you, period."

By this language, the jury may have been made aware of the trial judge's conviction that $30,000 was an unreasonably high figure. We conclude that he erred in suppressing this portion of counsel's oral argument.

*Did the court err in directing that notes taken by a juror be turned over to the court?*

Plaintiff's counsel, during the course of oral argument, placed certain computations in regard to medical expenses on the courtroom blackboard. It came to the attention of the court, through opposing counsel, that one of the jurors, during the noon recess, made copies of these figures. Opposing counsel moved for a mistrial. The motion was denied, but upon the resumption of the trial, the judge made inquiries to determine which juror made the notes. The following dialogue took place:

"Court: Would you please surrender that to the court? Will you take it, Mr. Bailiff?
"Mrs. Valen: I didn't know I couldn't.
"Court: I want you to understand that when this case is decided, it is upon the evidence produced in court and that blackboard is not part of the evidence and will not be considered. The court will tear it up. You will not consider anything that you wrote down.
"Jury: No.
"Court: Then, that's out, I mean.
"Jury: All right."

The judge then tore up the slip and, in the presence of the jury, disposed of it in a wastebasket.

The affidavit of plaintiff's counsel, Fred F. Kaftan, is made a part of the record and purports to set forth the matters that were on the blackboard. These figures, affiant states, are supported by the testimony in the record, and a perusal of the record indicates this to be true, although, admittedly, some of the figures involve future expenses and, therefore, to that extent, are speculative.

It is within the discretion of the trial judge to determine whether or not jurors may take notes. 154 A. L. R. 878, 880. The general rule nationally is that it is entirely proper for jurors to make notes. 53 Am. Jur., Jury, p. 623, sec. 851, and Anno. 154 A. L. R. 878—Taking of Notes by Jury. This general rule is, of course, circumscribed by the judge in the exercise of discretion. This court takes the position, however, that jurors should not in the ordinary case be permitted to take notes. While the taking of notes is, for a person trained in that technique, an essential part of the process by which facts are assimilated, in the hands of one who is not skilled in note taking, the practice is likely to be an impediment. It is likely to interfere with his perception and appreciation of what is going on in the courtroom. A skilled note taker or one who is able to record the proceedings in shorthand would have a marked advantage in influencing other jurors. It is therefore submitted that the sound discretion of the trial judge will almost universally prohibit the taking of notes. Nevertheless, this court recognizes that trials occasionally are of protracted length and are replete with facts, figures, and computations that serve only to confuse a jury unless the figures are accurately before the jury at the time of deliberation. If, in the discretion of the court, it appears necessary to prevent jury confusion, we see nothing wrong with the practice of having counsel prepare tabulations and com-

putations of matters in evidence. In the event facts and figures so submitted are not stipulated the trial judge should, by appropriate instruction, make that fact clear to the jury. The judge, by appropriate instructions, should also caution the jury not to place undue emphasis on the figures thus submitted as compared to figures that might otherwise be in evidence. In the case of *Affett v. Milwaukee & Suburban Transport Corp.* (1960), 11 Wis. (2d) 604, 614, 106 N. W. (2d) 274, we concluded that there was no objection to the "use of a blackboard as an aid to illustrate or demonstrate in the course of proper argumentation." It was not improper for appellant's counsel to use the blackboard. The computations that he made thereon were proper adjuncts to the presentation of his argument to the jury. The facts stated thereon, except to the extent that it was made clear that some figures were merely projections of future disbursements, were matters that were offered in testimony.

We are satisfied that the trial court within his discretion could ask for the surrender of the notes and could properly have admonished the jurors and cautioned them not to take notes. We are concerned, however, with the interpretation that the jury might well have placed upon the judge's statements. The judge stated, "You will not consider anything that you wrote down." While viewing this with the hindsight that makes this court so omniscient, it is apparent that the trial judge merely wanted to make it clear that the jury was to attach no special emphasis to facts that were written on a blackboard or to those facts that were further reduced to notes. However, we believe that it would not have been unreasonable for the jury to have concluded that the facts thus set forth were not properly to be considered by them at all and that there was something wrong about the use of these figures in arriving at their verdict. We conclude the manner in which this problem was handled by the court was

prejudicial and made it less likely that plaintiff would receive a verdict properly based on the evidence.

### *Was there error as to instructions regarding insurance?*

The trial court instructed the jury that there was no dispute as to insurance and that the liability or non-liability of the defendants for damages claimed is exactly the same whether or not covered by insurance. After the jury commenced deliberations, the counsel for the defendants Fischer and Hartford Accident & Indemnity Company objected to this instruction and requested that it be withdrawn. The court at that time directed the jury in the following words:

". . . the court's attention has been directed to the fact that the court made a mistake in that there is no dispute as to insurance in this case. That was included in one of the instructions that one of the attorneys for one of the parties requested. I want to correct that in this respect: there is no agreement here—or I wish to withdraw that statement that there is no dispute as to insurance in this case."

Appellant's counsel takes the position that this withdrawal of the instruction was prejudicial in that it may have misled the jury into thinking that the plaintiff's counsel had, by requesting an erroneous instruction, led the judge into error and that, further, this withdrawal might have led the jurors to conclude that one or more of the defendants was uninsured and that this would prejudice the rights of the plaintiff. We see no error in the trial judge's instruction, nor has the plaintiff's counsel convinced us that he was thereby prejudiced.

### *Did the overall conduct of the trial prejudice plaintiff?*

We find it impossible not to conclude that the error of the trial court in refusing to allow plaintiff to submit

a lump-sum figure and the manner in which the jurors were admonished not to take notes were prejudicial to the plaintiff. We have previously stated that errors in the conduct of the trial will not justify a reversal of the judgment " 'unless it appears pretty clearly that had they not occurred, the result might probably have been more favorable to the party complaining.' " *Filipiak v. Plombon* (1962), 15 Wis. (2d) 484, 495, 113 N. W. (2d) 365. It appears that these errors cumulatively had this result. They had the effect of limiting the plaintiff in her right to make a full presentation of her case. That these errors in fact prejudiced her is apparent from the extremely low jury award of damages. There was not only evidence of extreme pain and loss of earnings, but also of severe scarring and testimony that the scars to some degree would be permanent. The trial judge commented that the award "is rather low." Counsel for the defendants admit that the award is low. We conclude that the award is inadequate and that the circumstances of the trial prevented the jury's proper consideration of damages.

We also conclude that the findings of negligence should be reexamined. The jury found no negligence upon Zwieg, the driver of the oncoming car, no negligence upon Bopray, the driver of the following car, found 95 percent negligence upon defendant Fischer and five percent negligence upon Mrs. Fischer. It is undisputed that Zwieg was confronted with an emergency situation, and it appears clear that the jury verdict exonerating him from negligence is proper. We conclude, however, that the question of the negligence of the other parties involved should be retried. We note that it was undisputed that Bopray was following the Fischer vehicle at a distance of 130 feet and at a speed variously estimated to be from 35 to 45 miles an hour. Bopray testified that he could have gone around the Fischer vehicle but was sure he could stop in 130 feet. This court takes judicial notice of the fact that is revealed by the Wisconsin's Manual for

Motorists (rev. ed. January, 1963), page 36, that the stopping distance at the speed of 40 miles per hour on dry, level pavement is 149 feet.[1] We are also mindful of the fact that the police officer testified that this accident occurred on a level highway which was covered with two inches of packed snow. Referring to a chart of stopping distances compiled by the Lumbermens Mutual Casualty Company and reproduced as figure 23, 10 Am. Jur., Proof of Facts, Appendix, the stopping distance at 40 miles an hour on a snow-packed highway is computed to be 267 feet *after* depressing the brakes. If there were factors that properly caused the jury to exonerate Bopray of negligence, they do not appear of record. On the face of the record before us, it is inexplicable that the jury made no finding of negligence in regard to Bopray. We conclude that in the interests of justice, pursuant to sec. 251.09, Stats., the findings of negligence and the apportionment of them must be set aside. A new trial on the negligence issues is necessary in respect to all parties with the exception of Zwieg.

*Did the trial court err in striking certain medical and hospital bills from the judgment that Mrs. Fischer obtained against her husband?*

In this case, Mrs. Fischer was unconscious at the time she was first treated by Doctor Humke. There is evidence that Mrs. Fischer prior to this accident paid her own medical expenses and that her husband had paid no obligations for that purpose during the year that they were married. The general rule is that, when a physician renders necessary medical services to an unconscious person

[1] The following decisions have recognized that the court may take judicial notice of the Wisconsin's Manual for Motorists: *Blahnik v. Dax* (1963), 22 Wis. (2d) 67, 70, 125 N. W. (2d) 364; *Mainz v. Lund* (1963), 18 Wis. (2d) 633, 642, 119 N. W. (2d) 334; and *St. Paul Fire & Marine Ins. Co. v. Burchard* (1964), 25 Wis. (2d) 288, 295, 130 N. W. (2d) 866.

or to a person who is unable to expressly contract, there arises an implied contract between the physician and the injured party for the payment of what the services are reasonably worth. 41 Am. Jur., Physicians and Surgeons, p. 256, sec. 142. However, this general proposition envisages that the unconscious person is the proper responsible contracting party. In *Jewell v. Schmidt* (1957), 1 Wis. (2d) 241, 250, 83 N. W. (2d) 487, we pointed out that "a married woman may contract for medical services in her own right, but, in the absence of the establishment of such an *express* contract between the wife and the person rendering the service, the husband, and not the wife, is the person liable for such expenses . . . ." (Emphasis supplied.) In *Seifert v. Milwaukee & Suburban Transport Corp.* (1958), 4 Wis. (2d) 623, 91 N. W. (2d) 236, we made an exception where the wife, who was severely injured in an accident, was treated immediately thereafter by a physician who had been her doctor before and during her marriage and who had been paid by her on prior occasions for medical services both before and after marriage. The court there held that there was an *existing* contractual relationship between the wife and the doctor, and that the obligation of the wife to pay arose as the result of the prior relationship between the parties. It is clear in the instant case that Mrs. Fischer had not previously been treated by Doctor Humke. We reiterated in *Puhl v. Milwaukee Automobile Ins. Co.* (1959), 8 Wis. (2d) 343, 349, 99 N. W. (2d) 163, where a *Seifert* situation of a prior course of conduct or arrangement between the injured married woman and the doctor does not exist, the implied contract which arises is with her husband. In the absence of a *prior* understanding between Mrs. Fischer and those who rendered her medical or hospital services, the implied contract is with Mr. Fischer, and the fact that medical and hospital bills are sent to the wife or the fact that she subsequently pays those bills is not conclusive of a contract between her and the physician or hospital.

In view of the prejudicial error and utterances in the course of trial, together with the award of inadequate damages, and negligence findings that in part appear to be without support in the record, we conclude that a new trial should be ordered on all issues except as to the negligence of Zwieg.

*By the Court.*—Judgment dismissing the complaint as to the defendant Zwieg is affirmed. The judgment in respect to all other issues is reversed and the cause remanded to the circuit court for a new trial.