James J. Warnes, Administrator of Estate of Mary Camille Warnes, Deceased, Plaintiff-Appellee, v. Champaign County Seed Company, and William R. Sattler, Defendants-Appellants.

Gen. No. 9,988.

Third District.

February 18, 1955.

Released for publication March 7, 1955.

Henry I. Green, Hurshal C. Tummelson, and Darius E. Phebus, all of Urbana, for appellants; Oris Barth, of Urbana, of counsel.

Arthur J. B. Showalter, and Albert Tuxhorn, both of Champaign, for appellee.

MR. JUSTICE REYNOLDS delivered the opinion of the court.

This case comes to this court on appeal from the circuit court of Champaign county. The suit grew out of a collision between a car driven by James J. Warnes and a truck belonging to the Champaign County Seed Company, a corporation, and driven by one William R. Sattler, employee of the corporation. In the collision the wife of James J. Warnes was killed. He brought suit as administrator of the estate of his wife, against the driver of the truck, Sattler, and the owner and employer, Champaign County Seed Company. The case was tried before a jury and the jury returned a verdict

in favor of the plaintiff for $19,000.00. From that judgment the defendants appeal.

The collision occurred on what is known as the Philo-Sidney road, which was a black-topped two-lane highway near Urbana, Illinois. The accident occurred about 7:30 p. m. on the evening of October 15, 1952. James J. Warnes was driving and in the front seat, as a guest passenger, was his wife, the plaintiff's intestate. In the rear seat were the two children of the Warnes', namely Martin Leo Warnes, then aged four years, and Diana Kay Warnes, then aged two years. Warnes was driving a Chevrolet sedan in an easterly direction at about 45 to 50 miles per hour. Warnes was meeting a car and had dimmed his lights and as he approached a lane that intersected the highway, known as the Adams Lane, a dark object showed up in front of him. His wife screamed a warning and he attempted to swerve to the left but struck the back of the truck. The right front of the Warnes car hit or collided with the left rear dual wheels of the truck. The body of the truck was high enough that it came back over the hood of the Warnes car and tore off the cab part of the car on the right side and Mrs. Warnes was instantly killed. Warnes testified that the truck kept moving after the accident and dragged his car with it. It is admitted that the truck was without lights at the time of the impact. Just how long is a question of fact, the driver of the truck claiming it was 10 or 15 seconds; that the lights had gone out when he turned them up to high beam and that he immediately applied his brakes and turned to the right off the road; that it was like being in a well, dark, and he was not sure whether or not he got on the shoulder. The testimony of the driver of the truck is corroborated in part by a Mr. Lafenhager, the driver of the car coming from the west. He saw the lights on the truck go out and he also estimates that it was about 10 to 20 seconds from the time he saw the lights on the truck go out until the collision.

154

There were two reflectors on the back of the truck, on the tail gate. Whether or not the reflectors were clean and would show the reflection of the lights of the Warnes car, does not appear to have been shown. Warnes testified that there did not seem to be any color to the mass in front of him. The lights on the truck were not working properly. The driver, Sattler, had been warned by a fellow employee that the lights were not in good order. This testimony is corroborated by the coroner of Champaign county, Mr. Wikoff and by a State highway policeman. There is some testimony that Sattler tested the lights at the farm of Oscar Krumm. At that time they were apparently all right. The State highway policeman, Carl Ray, testified that the mud flap on the left rear of the truck had been sheared off by the collision, but that he saw where the taillight had been before the accident and that the mud flap would have shut off the view of the taillight from the rear. This officer also testified that the driver, William Sattler, told him that the regular driver had warned him about the lights not being in good working condition. The officer tested the light system and stated that the lights would go on part of the time but most of the time they would not; that if he hit the high beam switch, they would go out every time.

The evidence of the officer, Carl Ray, as to the mud flap was disputed by the manager of the defendant corporation, who testified that he had had the light put behind the flap before the accident.

It is not clear whether the truck was off the highway at the time of the collision or not. The driver testified that he was not sure; that if he had hit the soft shoulder before slowing down, he might have turned over. After the collision, it is certain, from the testimony that the two vehicles, locked together, came to rest on the right side, partly on the shoulder and partly on their right-hand lane of the highway.

155

The first point raised by the defendants is that the jury did not know and was not advised as to what the issues in the case were. In support of this contention, the defendants cite a number of cases that in general state the law as to the giving of instructions but this court is unable, from the cases cited and the brief submitted, to determine just what the defendants are complaining of.

The primal object in pleading is to produce an issue affirmed on one side and denied on the other and the trial is had to determine the issue thus made. It is equally true that the object of instructions is to clearly inform the jury in a concise and comprehensive manner, what the issues are, the principles of law to be observed and the facts material to be proved to justify their verdict. This court also agrees that instructions to the jury should be predicated on the evidence and confined to the issues of the case, as cited in Illinois Cent. R. Co. v. Sanders, 166 Ill. 270. It is also true that relief should not be granted where not pleaded, but that the pleader must stand or fall with the case made by the pleading. All this being admitted, it is difficult to follow the contention of the defendants that the jury did not know and was not advised as to what the issues of the case were. The brief of the defendants does not point out what instructions were tendered for the defendants and refused, if any. Plaintiff's instructions Nos. 2 and 3 are mentioned but the defendants' brief says that there is no particular criticism of these two instructions, other than the way they operated in the light of the other instructions and the evidence in the case. The defendant-appellant complains of the following instruction which was given on behalf of the appellee: "The court instructs the jury that at the time of the collision in question there was in full force and effect a statute of the State of Illinois providing that whenever the death of a person shall be caused by wrongful act, neglect or default, and the act,

156

neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who, or company or corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, and in every action the jury may give such damages as they shall deem a fair and just compensation with reference to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person, not exceeding the sum of $20,000.00. You are further instructed that this same statute gives the same rights to a surviving husband and next of kin as it does to a surviving wife and next of kin." As was stated in Deming v. City of Chicago, 321 Ill. 341 at page 345: "This instruction is substantially in the language of the statute authorizing the action and fixing the limit of liability. It merely informs the jury that the right to maintain an action for the wrongful death of a person is granted by statute and that the limit of the recovery is $10,000.00." The instruction in this case is almost word for word with the instruction in the Deming case and it was approved by the Supreme Court.

From the record it appears that there were three instructions given for the plaintiff, designated in the record as plaintiff's instructions Nos. 2, 3 and 4 and plaintiff submitted a form of verdict instruction which was also given. There were eight instructions given for the defendants and seven tendered by the defendants were refused. The instructions given, both for the plaintiff and for the defendants are general in nature and this court can see no vice in any of them. The defendants do not complain as to the refusal of the instructions tendered in their behalf, so there is nothing to be determined on that point.

There is nothing in our law that compels either party to submit instructions. In fact, due to the

157

danger of giving an instruction that would be reversible error, many attorneys today give only what is known as stock instructions and are very careful not to submit instructions that might be reversible error. This is especially true of attorneys representing the plaintiffs in litigation. Too often the instruction as submitted is so technical that when submitted it could only tend to confuse the jury, rather than enlighten it. There is nothing, however, that will prevent a judge, if he so desires, from giving to the jury a short and concise summary of the issues involved in the case. Signa v. Alluri, 351 Ill. App. 11. In that case, the court said: "The question then presents itself, how should the jury be made acquainted with the allegations of the complaint or the issues raised by the pleadings?" and then answers its question by saying (page 19–20), "The safe and proper rule, as set forth in a long line of cases, . . . is for the court to inform the jury in a clear and concise manner of the issues raised by the pleadings. This should be accomplished by a *summary* of the pleadings, succinctly stated without repetition and without undue emphasis." While the rule as laid down in the case of Signa v. Alluri is undoubtedly the law of Illinois, there is nothing in the law that is mandatory upon the litigants or the court to instruct the jury. If either party presents instructions that are correct, it is the duty of the trial court to give such instructions. In the absence of the tender of such instructions, the party cannot be heard to complain afterwards that the jury was not properly instructed.

We can perceive nothing in the instructions or lack of instructions in this case that would warrant this court in disturbing the verdict of the jury.

The next two points raised by the defendants, namely that the jury was not permitted by the instructions as to the form of the verdict, to determine whether one defendant might be guilty and the other not guilty, and that the verdict did not warrant the judgment

158

rendered, can and will be considered together. The form of verdict submitted to the jury was in two forms, one: "If you find for the plaintiff you will say: 'We, the jury, find the issues for the plaintiff and assess the plaintiff's damages in the sum of ——— Dollars,' " and the second: "If you find for the defendants, you will say: 'We, the jury, find the issues for the defendants.' " While the answer of the defendant corporation denied the employer-employee relationship, yet all the evidence supported this fact. This is admitted by the brief of the defendants. So, for all practical purposes, in this case William Sattler, as driver of the truck and employee of the Champaign County Seed Company, was involved in this collision. It must be admitted from the evidence that he was on business for the Champaign County Seed Company, at the time of the collision, so there is no question of employment. The truck belonged to the defendant company. It is true that the jury might have found one of the defendants guilty of negligence as charged, and not the other, but it is difficult to see how the jury could have reached such a decision. The evidence here is so clear and uncontroverted that Sattler was an employee of the defendant company, was engaged on company business, in a company truck, that the question of employment became one of law, so that either both were guilty or both were not guilty of negligence. In the case of Lickhalter v. Industrial Commission, 383 Ill. 527, at page 533, the court there said: "In this case there was no dispute in the evidence as to the facts. The issue of employment therefore was one of law. . . ." Here the evidence is clear that Sattler was an employee on the day in question and on business for the company. In the case of Watt v. Yellow Cab Co., 347 Ill. App. 307, the court said: "Once ownership is established, the burden shifts to the owner to present evidence showing that the driver was not an agent acting in the course of his employment." Here the verdict of the jury was

159

in favor of the plaintiff in the following words: "We, the jury, find the issues for the plaintiff, and assess the plaintiff's damages in the sum of $19,000.00 Dollars." This verdict was in the exact words of the form of verdict submitted by the plaintiff and given by the court. The question arises whether or not a general verdict, such as this, is a valid and proper verdict, upon which judgment can be entered.

 A general verdict has been defined as one whereby the jury pronounces generally upon all of the issues in favor of either plaintiff or defendant. Weinhouse v. Woodruff, 324 Ill. App. 660. Ordinarily, with just one defendant, there could be no question of the sufficiency of a verdict finding the issues for the plaintiff, but in this case there are two defendants. It has been held that technical accuracy in a verdict is not required. Bencie v. Williams, 337 Ill. App. 414. In that case, the court held that while the verdict returned by the jury was defective in form, it did not necessarily follow that the verdict was void and the court then said: "Technical accuracy is not required, nor the strictness that is used in construing pleadings. Upon receiving a verdict in irregular form, it is proper for the court to consider the entire record, and to endeavor to construe the intent of the jury, having in mind what was before them." In this case with the matter of master and servant so fully proven that it was a matter of law for the court to pass upon, and not a question of fact, it would be entirely proper for the court, if the verdict was defective in that it did not name either or both of the defendants, to interpret the intent of the jury on the record.

 Where relief has been asked against several defendants, a general verdict for plaintiff will be construed as a verdict against all defendants. Sparberg v. Cohen, 313 Ill. App. 143.

 We think the test in a general verdict is whether or not it expresses the intent of the jury so

160

that the court can understand it and enter a judgment on the verdict, and in this case, where in the opinion of this court, if one defendant could be held guilty, both of the defendants as a matter of law must be held guilty, it is clear that the verdict of the jury expressed the intent of the jury that both defendants were guilty of negligence, as charged, and that the court properly entered a judgment on the verdict.

 The defendants contend that the only proper deduction that could be drawn from the evidence was that the death was caused either through accident or by the contributory negligence of the plaintiff and his wife, raises a question of fact. This court has repeatedly held that it will not interpose its judgment for that of a jury, which has the opportunity to see and hear the witnesses, unless the verdict of the jury is clearly and palpably erroneous.

It is the opinion of this court that defendants received a fair trial, free from reversible error, and therefore the judgment of the circuit court of Champaign county is affirmed.

Affirmed.