Spang and wife, Respondents, vs. Schroeder and another, Appellants.

*January 10—February 5, 1957.*

For the appellants there was a brief and oral argument by *John J. Schneider* of Fond du Lac.

For the respondents there was a brief by *McLeod, Donohue & Colwin* of Fond du Lac, and oral argument by *Joseph D. Donohue*.

BROADFOOT, J. On October 4, 1955, Albert Spang, Thomas Schroeder, and William Altman were students at North Fond du Lac high school. Spang was a freshman and on the date of the accident he was fifteen years, eight months, and fifteen days of age. Schroeder and Altman were somewhat older, one being a sophomore and the other a junior in high school. After school Spang started walking to his home. He had reached a point on the south side of Winnebago street just west of the intersection of that street with Florida avenue. Schroeder was the owner of a two-door coach-type car of ancient vintage. Schroeder and Altman lived in the country west of North Fond du Lac. Altman was riding home with Schroeder. As they overtook Spang, Schroeder drove to the south side of the street opposite Spang and invited him for a ride. Spang lived less than two blocks from the place he was standing when he visited with Schroeder and Altman. He had to continue west to the next intersection and then south one block on Maine avenue.

There was a dispute in the testimony. One witness for the plaintiffs testified that Schroeder asked Spang if he would like a ride home; that Spang declined, saying he just had to go around the corner and that he did not have very far to go; that Schroeder again asked Spang to ride and again

he declined; that Schroeder then stated he would let him off on his corner or at his home. Another witness for the plaintiffs testified that he overheard the conversation that Spang refused the invitation to ride because he had only a ways to go and that Schroeder said if he would stand on the running board he would give him a lift to his street. Schroeder did not stop at the intersection of Winnebago street and Maine avenue, nor did he turn south at that intersection toward the Spang home. There is testimony that instead of stopping he accelerated his speed and continued west. Altman testified that when they reached the corner Spang told Schroeder he had to go to work and wanted to get off, but that Schroeder said nothing and kept on going. Altman further testified that some farther distance from the corner Spang again told Schroeder he wanted to get off. Schroeder testified that he invited Spang to take a ride. He denied that he promised to let him off at the corner. He admitted that when they were some distance past the Maine avenue intersection Spang said that he had to go to work. Schroeder said nothing but kept on going. A short distance later Altman turned and Spang was not on the running board. They looked back and saw him lying on the highway. The car was stopped and they went back to where Spang was lying. Spang died as a result of the accident.

The trial court held as a matter of law that Schroeder was causally negligent with respect to permitting the deceased to ride on the running board of the car. The jury found that Schroeder was causally negligent with respect to speed. By its further answers the jury found that Spang got on the running board of the automobile pursuant to an agreement that he would be let off at the intersection of Maine avenue and Winnebago street or at his home; that Schroeder violated the agreement; that Schroeder continued driving west from said intersection without securing the consent of Spang; that Schroeder continued west from said intersection contrary to

the wishes of Spang; that Spang was not negligent with respect to the manner in which he was riding on the automobile; and that the negligence of Schroeder did not operate to increase the risk assumed by the deceased Spang or create a new danger. A question as to assumption of risk on the part of Spang was included but the jury was instructed not to answer the same unless they found Spang causally negligent in respect to the manner in which he was riding on the automobile. Accordingly they did not answer that question.

Upon motions after verdict the court changed the jury's answer inquiring as to whether the negligence of Schroeder operated to increase the risk assumed by Spang or to create a new danger from "No" to "Yes." The special verdict was drawn by the trial judge, who invited comment thereon by the parties. At that time the defendants moved that the court submit a question as to whether Spang was negligent in riding on the running board of Schroeder's car and that the court answer said question "Yes." The defendants also moved to substitute for the question inquiring as to whether Schroeder continued driving west from the intersection contrary to the wishes of Spang, a question as to whether Schroeder was causally negligent in continuing to drive past the intersection. Otherwise no objections to the form of the verdict were made by the defendants. Defendants' motions were denied.

The defendants' first contention is that the jury was never given a fair opportunity to decide whether or not plaintiffs' decedent had assumed the risk inherent in riding on the running board of the car or whether he was contributorily negligent. This contention is based upon a combination of complaints as to the form of verdict and instructions given in connection therewith.

Each side has a different conception of the law that should be applied to the facts. It is and was the contention of the plaintiffs that after Schroeder drove his automobile beyond

the intersection Spang was a prisoner thereon or, at best, an involuntary passenger who had no choice as to his destination, the speed, or other actions of the driver of the car; that Spang did not assume any risk beyond the intersection and that he had no duty to protest. On the other hand, the defendants contend that it was Spang's duty, after passing the intersection, to protest because he repented of his position on the car or was apprehensive of the way in which the car was being driven and should have asked to be permitted to get off. If we understand their position correctly, his protest should have been based upon one of those two grounds and his protest should have been framed in that language.

We cannot agree with either contention. Sec. 85.39, Stats., prohibits persons to ride on any portion of a motor vehicle not designed or intended for the use of passengers and also prohibits the operator of a motor vehicle to operate the same when any person is upon any portion thereof not designed or intended for the use of a passenger when a vehicle is in motion. When they started out both Schroeder and Spang were violating that statute. If the accident had occurred prior to or upon reaching Maine avenue there would have been causal negligence on the part of each as a matter of law and there would have been assumption of risk on the part of Spang. Beyond that point it was not a matter of contract. The relationship of host and guest continued and it was definitely the duty of Spang to protest. Without such protest he would have assumed the risk of continuing. However, we cannot agree with the defendants that he must tell the driver he wanted to get off because either he repented of his position and feared danger to himself by being asked to continue therein or that he was apprehensive of the way in which the car was driven. Schroeder admitted that when past the corner Spang told him he had to go to work. Schroeder knew Spang was working after school, but he said nothing and continued at a speed that made it unsafe for

Spang to jump off the running board. Altman testified that, when they reached the intersection with Maine avenue, Spang said he had to go to work and he wanted to get off. Schroeder did not deny that statement but said he had no recollection of it. Under all of the circumstances and upon Schroeder's admission, there was a sufficient protest unheeded by Schroeder and because of that admission no question inquiring as to protest had to be submitted to the jury. The trial court was justified in changing the answer to the inquiry as to the negligence of Schroeder in increasing the risk or adding a new danger to Spang. When Schroeder continued after the protest he increased the danger assumed by Spang upon getting upon the running board. Spang was willing to assume the risk of riding as he did for the short distance he had to go and at the low rate of speed that must have been maintained either to stop at the corner or to make the left turn. The acceleration of speed at and beyond the corner increased Spang's danger and added a new one. Under the circumstances, liability was clearly established.

The defendants next complain that the trial court committed error in sustaining objections to certain questions put to Peter Spang relating to damages. That complaint, however, was not properly preserved as the motion for a new trial did not include it as one of the grounds therefor.

Finally, the defendants contend that the award of the jury for pecuniary damages is excessive and is not sustained by the evidence. The trial court passed upon this matter and in its memorandum decision had this to say:

"Is the allowance of $5,000, for pecuniary loss sustained by the parents of the deceased Albert Spang excessive? The father is approximately sixty-three years of age and is engaged as an ordinary laborer by the Wisconsin Power & Light Company, being engaged in digging ditches. The mother is several years younger. They do not own an automobile. The deceased boy was their youngest child, he having eight brothers and sisters. The defendants strenuously contend that the allowance of $5,000 is excessive. According to

the testimony, the boy was a good boy, was ambitious, and probably would have finished high school, but there was no intention of sending him to college. He was permitted to keep his own earnings, a bank account having been opened in the joint names of the boy and his mother; and at the time of the death of the boy there remained $20 in the account. He had a steady job, which he had obtained in the summer of 1955 and continued working after school and on Saturdays after school started. He earned $1.25 an hour. His employer testified that he could have continued working and that it was necessary to hire another boy to take his place. He performed the usual and customary services around the home. His parents testified that they did not expect him to turn over his earnings to them. . . .

"In the instant case we have a boy fifteen and a half years of age, already earning substantial amounts of money, and who would have finished high school but had no intention of going on to college. During the period that this boy remained under twenty-one years of age, the parents would have been entitled to have received his earnings as a matter of right. It was for the jury to decide; and the amount of $5,000, which they found, must be sustained if there is evidence from which different inferences could be drawn; and it was for the jury to decide what inferences were proper under all the circumstances.

"It has often been stated and held as follows: 'Damages of this nature, unless obviously the result of passion and prejudice, are peculiarly within the province of the jury.' This court concludes that there were different inferences which could be drawn from the evidence, and it was up to the jury to decide what proper inferences were to be drawn under all the circumstances. The finding of $5,000 for pecuniary loss was within the province of the jury, and in the opinion of this court, was not the result of passion and prejudice. Even though the award may appear generous to this court, this court cannot say that it is necessarily excessive, and, by reason thereof, concludes that the award of $5,000 for pecuniary loss sustained by the parents of the deceased boy must be upheld."

A careful review of the record shows no reversible error.

*By the Court.*—Judgment affirmed.