WEST BEND MUTUAL INSURANCE COMPANY and others, Plaintiffs and Respondents, v. CHRISTENSEN and others, Defendants and Respondents: RETSON (George) and another, Third-Party Defendants and Appellants: RETSON (Chris) and others, Third-Party Defendants. [Case No. 328.]

FUSFELD, d/b/a Rose Shop, and others, Plaintiffs and Respondents, v. NORTHWEST SUPPLY COMPANY, INC., and others, Defendants and Respondents: RETSON (George) and another, Defendants and Appellants. [Case No. 329.]

AMERICAN EMPLOYERS INSURANCE COMPANY, Plaintiff and Respondent, v. NORTHWEST SUPPLY COMPANY, INC., and others, Defendants and Respondents: RETSON (George) and another, Defendants and Appellants: RETSON (Chris) and others, Third-Party Defendants. [Case No. 330.]

RETSON (George) and another, Plaintiffs and Appellants: RETSON (Chris) and others, Plaintiffs, v. NORTHWEST SUPPLY COMPANY, INC., and others, Defendants and Respondents. [Case No. 331.]

RELIANCE INSURANCE COMPANY and others, Plaintiffs and Respondents, v. CHRISTENSEN and others, Defendants and Respondents: RETSON (George) and another, Appellants. [Case No. 332.]

*Nos. 328–332. Argued March 28, 1973.—Decided April 20, 1973.*
(Also reported in 206 N. W. 2d 202.)

For appellants George Retson and Phillip Retson there was a brief by *Herrling, Clark & Hartzheim* of Appleton, and oral argument by *Don Herrling*.

For the plaintiffs-respondents there was a brief by *Stanley S. Chmiel* and *Byrne, Bubolz & Spanagel*, all of Appleton, for West Bend Mutual Insurance Company; *Bradford & Gabert* and *Jerome H. Block*, all of Appleton, for Lewis Fusfeld, d/b/a Rose Shop; *Adams, Cooke, Loehning, Woodrow & Mack* of Neenah, for American Employers Insurance Company; and oral argument by *Stanley R. Gabert*.

For the defendants-respondents there was a brief by *Hoefel & Coughlin* of Appleton, for Wisconsin-Michigan Power Company; and *Welsh, Trowbridge, Planert & Schaeffer* of Green Bay, for Northwest Supply Company, Inc.; and oral argument by *Harry P. Hoeffel* for defendant-respondent Wisconsin-Michigan Power Company.

HALLOWS, C. J.   The issues on this appeal concern the instructions given to the jury and the sufficiency of the evidence in support of the apportionment of negligence. At the trial, the Retsons submitted written requested instructions, which were refused by the trial court. This procedure is sufficient and proper as a basis for their claim without additional objection that the instructions given in place thereof by the trial court were erroneous. *See: Boller v. Cofrances* (1969), 42 Wis. 2d 170, 166 N. W. 2d 129; *Metcalf v. Consolidated Badger Co-operative* (1965), 28 Wis. 2d 552, 137 N. W. 2d 457; *Balen v. Franklin* (1964), 25 Wis. 2d 246, 130 N. W. 2d 747.

Instructions must be warranted by the evidence and where the evidence does not support a requested instruction, it should not be given. *Erdmann v. Frazin* (1968), 39 Wis. 2d 1, 158 N. W. 2d 281; *Bruss v. Milwaukee Sporting Goods Co.* (1967), 34 Wis. 2d 688, 150 N. W. 2d 337. Additionally, an instruction should be specific and tailored to fit the evidence. *Lawrence v. Jewell Companies, Inc.* (1972), 53 Wis. 2d 656, 193 N. W. 2d 695; *Kink v. Combs* (1965), 28 Wis. 2d 65, 135

N. W. 2d 789. It is not error for the trial court to reject an instruction which is too broad in scope even though the instruction is academically correct. But a properly requested instruction must be given in substantially the form requested.

Some of the facts upon which the alleged incorrect instructions and the requested instructions were based are in dispute. George and Phillip Retson were the owners of Retsons Restaurant and building. George Retson decided he wanted to install in his remodeled restaurant a 165,000 BTU Frymaster MJ-36 deep fryer to replace a 65,000 BTU fryer previously used in the restaurant. He had Northwest Supply, which did not carry Frymaster products, order the requested fryer. When it arrived, George Retson called the power company to install it, but two of its men could not do so because the gas inlet pipe was too small and the fryer was too tall to fit in the place the Retsons proposed to place it. According to the Retsons' version, Richard Steinberg of the Northwest Supply told them prior to the purchase that the model would not fit under the restaurant's ventilation hood but would work with the legs cut off. The servicemen from the power company suggested that only part of the legs and flue be modified, giving the specific amounts to be cut off. They recommended Tschank and Christensen, who were working on the heating and ventilating system for the remodeling, do the job. George Retson talked to Robert Christensen, gave him the installation manual which came with the fryer, the specific figures suggested by the power company men and Christensen told him the alteration and installation would be no problem. An employee of Tschank and Christensen made the alterations and installed the fryer. Although instructions on the fryer door warned that lighting without oil in the fry pot would damage the fry pot, the employee lit the burner while

the pot was empty, and almost immediately a fire started in the exhaust system above the fryer, which spread and caused the damage complained of.

Contrary to the Retsons' version, Mr. Steinberg claimed he was never asked his opinion as to the fryer's suitability or size and never made any recommendation as to how to make it fit into the space reserved in the restaurant for it. The power company men claimed they told George Retson the fryer would be unsafe if connected as it was prior to modification and suggested he get a smaller model. They also suggested he contact the manufacturer to see if alterations could be made. In his adverse examination, Mr. Christensen testified he told George Retson he would rather not install the fryer and advised Retson they did not modify listed units. However, upon Mr. Retson showing him where to cut the legs, the alterations and installation were made.

There was expert testimony that the ventilating system was poorly designed, that the exhaust system had not been cleaned for five or six years, and that although periodically cleaned, the exhaust system filters had not been changed in five years and were full of grease at the time of the fire. The filters were of a type which loaded with grease from back to front and should have been changed every two years, even with weekly cleaning. Between the top of the flue of the fryer and the under-surface of these filters in the ventilating system, there should have been an 18-inch clearance, instead of only six inches, which was the distance left open. This apparently was the same distance separating the old fryer and the exhaust system. Nevertheless, the fire started in the exhaust system and became uncontrollable.

The Retsons asked the trial court in reference to the negligence of Northwest Supply to instruct in accordance

with Wis J I—Civil 3242 [1] that when a seller sells a product which due to defective manufacture or otherwise is dangerous when used as it is intended to be used, an adequate warning of danger should be given. The trial court rejected the instruction and instructed,

"If during the course of its sales negotiations the company became aware of any danger presented in the installation of the fryer by reason of its design, then it had a duty to exercise ordinary care to give a reasonably adequate warning of such danger to the buyer."

We think the suggested instruction was too broad and the instruction given was correct. There was no defective manufacture; nor was the fryer otherwise dangerous when used as it was intended to be used. The instruction given was limited to the dangers presented because of the fryer's installation in the light of its being too tall, which everyone knew. The instruction given was not defective because it required the seller to be actually aware of the danger. When the fryer was modified by cutting off the legs to fit under the exhaust hood and was installed with a clearance of only six instead of 18 inches, the seller could not be held liable for failure to warn under such conditions. *Strahlendorf v. Walgreen Co.* (1962), 16 Wis. 2d 421, 114 N. W. 2d 823, is not applicable because the seller, who did not carry the product but merely ordered it at George Retson's specific request, lacked any opportunity to obtain constructive notice of

---

[1] "3242 Negligence: Duty of Manufacturer (Seller) to Warn of Dangers of Product With Respect to Intended Use

When a . . . (seller) . . . (sells) a product which (due to defective manufacture or otherwise) is dangerous when used as it is intended to be used, it becomes his duty to exercise ordinary care to give adequate warning of dangers attendant upon the proper use of the product (or of the facts which make it likely to be such). The failure to perform such duty constitutes negligence."

any dangerous propensities of the article sold when used as the manufacturer intended it to be used.

Retsons requested an instruction based on Restatement, *Torts* 2d, sec. 323.[2] This instruction was rejected and the trial court gave the following instruction:

"You are instructed that if [the power company, Northwest Supply, or Tschank & Christensen] undertook to give advice or recommendations to the Retson brothers with respect to the alteration in connection with the installation of the fryer to accommodate it to its proposed location, and on which they reasonably believed the Retsons would rely and act, then it became its duty to exercise ordinary care to make inspection and investigation . . . and to give only such advice and make only such recommendations as they held themselves competent to make . . . ."

It is argued this instruction is erroneous because it was restricted to advice and did not include services, and made reliance on the advice necessary. In *American Mut. Liability Ins. Co. v. St. Paul Fire & Marine Ins. Co.* (1970), 48 Wis. 2d 305, 314, 179 N. W. 2d 864, this court noted that reliance upon a gratuitously performed act is not a necessary element for recovery and the Restatement makes an increased risk of harm and reliance alternatives. Nevertheless, the trial court merely tailored the instruction to the evidence. The Retsons claimed that because of their reliance upon representations made they did not hire competent men to alter and install the fryer. Any incompleteness in this instruction relating to ser-

---

[2] "One who undertakes . . . to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of such harm, or

"(b) the harm is suffered because of the other's reliance upon the undertaking."

vices in cutting the legs off and installing the fryer was covered and cured by the general instruction on ordinary care which was not inconsistent therewith. *See Crotty v. Bright* (1969), 42 Wis. 2d 440, 167 N. W. 2d 201; *Nieman v. American Family Mut. Ins. Co.* (1968), 38 Wis. 2d 62, 155 N. W. 2d 809.

The Retsons requested an instruction to the effect that the degree of care required was in proportion to the danger attendant upon the activity because gas, a dangerous agency, was involved. This instruction was properly refused. The fire did not occur from any explosion or defect in the connection of the gas inlet pipe to the appliance. Consequently, *Weber v. Interstate Light & Power Co.* (1955), 268 Wis. 479, 68 N. W. 2d 39, and *Webb v. Wisconsin Southern Gas Co.* (1965), 27 Wis. 2d 343, 134 N. W. 2d 407, are not applicable to the evidence of this case, which did not justify the requested instructions.

The trial court refused a requested instruction to the effect that every person is under a duty to make an investigation and inspection where the situation suggests it to be in order. Instead the trial court gave the previously quoted instruction to the effect that one who gives advice is under a duty to inspect. This instruction is tailored to fit the evidence. Only advice was involved with respect to Northwest Supply and the power company and their duty to investigate would arise only upon their undertaking to give advice. Any omission in the instruction as to the duty of Tschank and Christensen to inspect prior to installation was cured by the general instruction on ordinary care.

The Retsons claim the trial court erred in failing to give an instruction concerning the duty of an independent contractor who repairs a chattel and should know his work has made it dangerous. This instruction was based

upon Restatement, *Torts* 2d, sec. 403.[3] While the requested instruction correctly states the law, it was not error to reject the instruction because its substance was substantially and sufficiently encompassed in the general instruction on ordinary care. Error cannot be predicated upon a refusal to give a requested instruction even though it correctly states the law where the substance of the requested instruction is embodied in the general charge. *Simon v. Van de Hey* (1955), 269 Wis. 50, 68 N. W. 2d 529; *see also: McGill v. Baumgart* (1939), 233 Wis. 86, 288 N. W. 799; *Jones v. Monson* (1909), 137 Wis. 478, 119 N. W. 179, 129 Am. St. Rep. 1082.

The apportionment of causal negligence by the jury is attacked on the ground of insufficiency of the evidence. A review of the evidence sustains the apportionment, at least in respect to the Retsons. Their negligence could be no less and the evidence would sustain more. George Retson was in the restaurant business thirty-three years and his brother Phillip, nineteen years. They had purchased a number of fryers for their restaurant. The jury could believe Mr. Steinberg of Northwest Supply when he testified he did not make any recommendation on how the fryer could be fitted into the space in which the Retsons wanted to place it. The fryer was specifically purchased at the special instance and request of George Retson, who was intent upon having it and no other installed. The power company men suggested a smaller model be substituted, only to be told by George Retson that this was the size he wanted. The power company men denied making any specific recommenda-

---

[3] **"403. Chattel Known to be Dangerous**

"One who as an independent contractor makes, rebuilds, or repairs a chattel for another and turns it over to the other, knowing or having reason to know that his work has made it dangerous for the use for which it is turned over, is subject to the same liability as if he supplied the chattel."

tion to modify the legs or the flue of the fryer and Mr. Christensen testified that he told George Retson he did not want to make the modifications. Thus the evidence of the Retsons' insistence upon installing the oversized fryer, their experience in the restaurant business, their failure to contact the manufacturer in spite of a suggestion to do so, and their failure to have the exhaust system in a clean condition all support the 70 percent apportionment.

*By the Court.*—Judgment affirmed.