PEOT, and others, Plaintiffs-Appellants, v. FERRARO, and another, Defendants-Respondents.

*No. 75–703. Submitted on briefs March 8, 1978.—Decided June 6, 1978.*
(Also reported in 266 N. W. 2d 586.)

For the appellants the cause was submitted on the briefs of *Arlo McKinnon, Kenan J. Kersten* and *Kersten & McKinnon* of Milwaukee.

For the respondents the cause was submitted on the brief of *Donald R. Peterson* and *Borgelt, Powell, Peterson & Frauen, S. C.,* of Milwaukee.

ABRAHAMSON, J.  On October 18, 1968, Kenneth Peot, Jr., his cousin Gerald Peot, and Gregory Ross were killed instantly in a highway accident in Ozaukee County. Each boy was eighteen years old and a minor under then applicable Wisconsin law.  Actions for damages for wrongful death brought by the boys' parents were combined and tried to a jury in September, 1975, defendants' liability having been established in an earlier trial.

The jury's special verdict awards were as follows: to the parents of Kenneth Peot, Jr., $15,000 for loss of society and companionship and $5,000 for pecuniary loss; to the parents of Gerald Peot, $15,000 for loss of society and companionship and $1,000 for pecuniary loss; and to the parents of Gregory Ross, $15,000 for loss of society and companionship and $1,500 for pecuniary loss. Awards for funeral expenses were entered by the trial court pursuant to stipulation.  The trial court reduced

the awards for loss of society and companionship to the applicable $3,000 statutory limit[1] and granted judgment on the verdict as so amended.

The parents appeal from the denial of their motions after verdict and from those parts of the judgment stating the amounts to be recovered for pecuniary loss and for loss of society and companionship. Because of the combination of defense counsel's improper final argument and error by the trial court in instructions, we reverse the judgment and remand the cause for a new trial pursuant to sec. 251.09, Stats.[2]

## I.

Two rules govern the recovery of damages for the pecuniary loss suffered by parents when their minor child has been wrongfully killed: the first relates to

[1] Sec. 895.04 (4):

"Judgment for damages for pecuniary injury from wrongful death shall not exceed $35,000. Additional damages not to exceed $3,000 for loss of society and companionship may be awarded to spouse, unemancipated or dependent children or parents of deceased. . . ." Ch. 267, Laws of 1967.

The statute has since been amended. There is no limitation on the recovery of damages for pecuniary injury, and the limit of recovery for loss of society and companionship is $10,000. Sec. 895.04 (4), Stats.

[2] Sec. 251.09, Stats., provides:

"Discretionary reversal. In any action or proceeding brought to the supreme court by appeal or writ of error, if it shall appear to that court from the record, that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the supreme court may in its discretion reverse the judgment or order appealed from, regardless of the question whether proper motions, objections, or exceptions appear in the record or not, and may also, in case of reversal, direct the entry of the proper judgment or remit the case to the trial court for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with the statutes governing legal procedure, as shall be deemed necessary to accomplish the ends of justice."

recovery for the loss of the services and contributions the child would have given his parents during his minority; the second relates to recovery for the pecuniary benefits the parents would have received from their child after the child had attained his majority.

Pre-majority pecuniary injury is measured by the value of the wrongfully killed minor child's probable wages and services to the time of his majority less the costs the parents probably would have incurred in raising the child. *Prunty v. Schwantes,* 40 Wis.2d 418, 426, 162 N.W.2d 34 (1968). A parent is entitled to a minor child's wages and services as a matter of right, *Spang v. Schroeder,* 275 Wis. 92, 98, 90 N.W.2d 768 (1957), and the fact that the parents would have allowed the child to keep his earnings rather than have demanded such earnings for themselves does not reduce the parents' pecuniary loss. *Luessen v. Oshkosh Elec. Light & Power Co.,* 109 Wis. 94, 85 N.W. 124 (1901). As this court stated in *Luessen, supra:*

". . . The probability that the father might have allowed his son to spend his time in idleness, or might have given him his time, had he lived, does not militate at all against the fact of pecuniary loss. If a person is deprived of his capacity to work by the wrongful conduct of another, it was never supposed that the latter can benefit by the possibility or probability that his victim might in any event have spent his time in idleness. The surviving father here was entitled, as a matter of right, to the services of his son. As between him and the wrong-doer, the latter has deprived him of that right. It is entirely immaterial what disposition he would have made of his son's time had he lived. If one deprive a person of anything of value, the loss to the latter in a legal sense is not lessened at all by the circumstance, if it exist, that he intended never to enjoy it, or to bestow it as a gratuity upon another." 109 Wis. at 98.

The parents contend that despite their objections, the defendants were repeatedly permitted to elicit testimony

designed to convince the jury that the parents had suffered no pre-majority pecuniary injury because each of the boys was allowed to spend his earnings as he pleased. Because the boys' use of their earnings was irrelevant to the issue of the parents' pre-majority pecuniary loss, the parents requested the following instruction, based on the *Luessen* case:

"With respect to the child's wages and services during his minority, it is immaterial whether the child is allowed to keep his wages, or not required to contribute his services to his parents, during his minority. Even in such event, the parents are entitled to have the value of such wages and services included in their favor in determining whether the wages and services of the child during his minority would have a probable value exceeding the probable expenses the parents would be liable for for the reasonable care, maintenance and necessities of their minor child."

The parents contend that their requested instruction was a proper expression of the law and was required to counteract the deceptive and misleading impression defense counsel had created.

While the parents' requested instruction correctly states the law, the trial court did not err in rejecting it. Error cannot be predicated upon a refusal to give a requested instruction, even though it correctly states the law, where the substance of the requested instruction is embodied in another instruction. *West Bend Mut. Ins. Co. v. Christensen,* 58 Wis.2d 395, 404, 206 N.W.2d 202; *Sambs v. Brookfield,* 66 Wis.2d 296, 304, 224 N.W.2d 582 (1975). Here, the trial court gave the jury Instruction No. 1890, which embodies the substance of the requested instruction.[3] However, because Instruction No. 1890 does not set forth the law as clearly as does the re-

[3] That part of Wisconsin Civil Jury Instruction No. 1890 which relates to pre-majority pecuniary injury provides:

"Subdivision (a)—makes inquiry as to what sum will reasonably compensate the parent for pecuniary loss.

quested instruction and because defense counsel's trial strategy may have misled the jury, we believe that it would have been better practice had the trial court counteracted defense counsel's emphasis upon the boys' use of their earnings by giving the instruction requested by the parents.

## II.

The parents contend that a major portion of the damages they sought to prove at trial related to the loss of the pecuniary benefit they reasonably could have expected from their children after the children reached twenty-one years of age—the age of majority applicable at the time of this action. The trial court committed error, they argue, by overstating their burden of proof with respect to this item of damage in its instructions to the jury.

As we have noted, separate rules govern the recovery of pre-majority and post-majority pecuniary loss. We

"You will carefully consider all the credible evidence, and reasonable inferences therefrom, bearing on this inquiry, and in answer name such sum as will fairly and reasonably compensate the parent for such pecuniary or money loss as (he) (she) sustained because of the death of the minor child.

"You are instructed that under the law a parent is entitled to wages and services of a minor child. You are further instructed that a parent is liable for the care, maintenance, and necessities of the minor child. A minor child is one under the age of 21 years.

"If you find that the probable value of the services rendered to the parent and wages of the child would exceed the probable expenses that the parent would be liable for, the parent is entitled to recover for (his) (her) pecuniary loss.

"In this regard, insofar as it appears from the credible evidence, you should consider the age and health of both the child and the parent, the type of work or employment of the parent, the amount of wages and services rendered to the parent in the past, and those that to a reasonable probability the child would have rendered until he reached 21 years, and the reasonably probable expenses the parent would have had because of the child."

have held that because parents are not entitled to the services of a child except during minority, "it requires a different order of proof to justify an assessment of damages for pecuniary loss during the period subsequent to the attainment of the child's majority . . . . [T]here must be some evidence justifying an inference that the parents would have received pecuniary benefits after the attainment of the child's majority if death had not occurred." *McGonegle v. Wisconsin G. & E. Co.*, 178 Wis. 594, 596, 190 N.W. 471 (1922).

We pointed out the nature of the proof necessary to establish post-majority pecuniary loss in *McGonegle v. Wisconsin G. & E. Co., supra.* In *McGonegle,* an action for the recovery of damages for the wrongful death of plaintiffs' two and one-half year old son, we affirmed a jury verdict which assessed $1,000 for pecuniary benefits the parents might reasonably have expected from their child after he reached the age of twenty-one years. To the defendant's contention that there was no evidence upon which the jury could find that the plaintiffs could reasonably have expected any pecuniary benefit from their child after he reached majority we responded:

". . . True, evidence of this nature cannot be very direct or conclusive, but it should be such as the circumstances of the case will permit. The age of the parents, their state of health, earning capacity and financial condition, to show the probable necessity for contributions from the child, should appear. The disposition and ability of the child to contribute should also appear where that is possible to be shown. These facts will furnish a foundation from which the jury, in the exercise of their own judgment and discretion based on their knowledge of the ordinary affairs of life and the probabilities arising from their experience and observation, may conclude that a continuance of life would have resulted in pecuniary benefits to the parents even after the attainment of the child's majority. From the very nature of things much must be left to the discretion and good judgment of the jury. The statute [sec. 4256, Stats.] so contemplates. It authorizes them to give such damages as 'they may deem

fair and just.' *To require anything like that degree of certainty upon which the ordinary verdict must rest would be to render the statute nugatory* . . . . [V]erdicts in this class of cases [are not to be placed] on a plane with the ordinary verdict so far as the degree of certainty required to sustain the verdict is concerned . . . . [T]he 'reasonable certainty' required is only such as the circumstances may permit . . . . While [the jury's] conclusion *must rest to a large degree in conjecture,* from the very necessities of the case, such seems to be the legislative purpose, and *that purpose should not be defeated by requiring a degree of proof impossible of production.*" 178 Wis. at 596–98 [emphasis added].

In two recent cases we again noted that pecuniary injury for the wrongful death of a minor cannot be precisely established. In *Redepenning v. Dore,* 56 Wis.2d 129, 135–36, 201 N.W.2d 580 (1972), an action for damages for the wrongful death of plaintiffs' seventeen-year-old daughter, we stated:

"The appellants argue that there must be exacting testimony as to the value of the pecuniary loss. The law makes no such requirement. The reason is that it is impossible to provide an adequate mathematical formula or rule of law to be applied in all cases which the jury can utilize in its determination. So the jury is not held to any fixed and precise rule in fixing the amount of damages—but can compensate pecuniary losses or injuries from such amounts that find reasonable support in the evidence and are based upon the jurors' common knowledge and judgment."

In *Nordahl v. Peterson,* 68 Wis.2d 538, 553, 229 N.W.2d 682 (1975), a wrongful death action brought by the parents of a minor killed in an automobile accident, we stated:

"This court has held that there is no presumption in favor of parents receiving pecuniary benefit from children after their arrival at majority and that to support a verdict for such damages, evidence must be introduced. While evidence of this nature cannot be very direct or

conclusive, it should be such as the circumstances of the case will permit."

The parents' position here, as at trial, is that the trial court should have confined its instructions regarding pecuniary loss to Wisconsin Civil Jury Instruction 1890,[4] which incorporates the burden of proof held applicable by *McGonegle* to the establishment of post-majority pecuniary loss. The parents argue that the trial court prejudicially overstated their burden of proof by giving in addition to Instruction 1890 the following portions of Wisconsin Civil Jury Instruction 1705 ["General: Burden of Proof in Tort Actions"] and Wisconsin Civil Jury Instruction 1740 ["Jury Not to Speculate"]:

"In considering the question of damages to be assessed by you in answer to each damage question, you are instructed that the burden rests upon each person claiming damages to convince you *by the greater weight of the credible evidence to a reasonable certainty,* that such person has sustained damages in the respect inquired about and the amount thereof . . ." [Wis. J.I.—Civil No. 1705.] [Emphasis added.]

"You are instructed that damages must be established by evidence and reasonable inferences by evidence. Mere

---

[4] Insofar as it relates to post-majority pecuniary injury, Wisconsin Civil Jury Instruction No. 1890 provides:

". . . If it appears from the evidence that the parent would have received pecuniary benefits from the child after (he) (she) reached the age of 21, you should include an amount that will fairly and reasonably compensate the parent for such benefits as (he) (she) could have reasonably expected to receive from the child's contributions, had (he) (she) continued to live, reducing such amount to its present value.

"In this regard you are to consider the health, age, financial position and employment of the parent, and degree of dependency of the parent upon the child. You are also to consider the child's age, type of employment, earnings, other dependency, amount contributed in the past, and disposition of the child toward the parent, insofar as these elements appear from the credible evidence before you, and then fix upon such sum as is fair and just compensation for such pecuniary or money loss."

*possibilities leave the solution of an issue of fact in the field of speculation and conjecture to such an extent as to afford no basis for an inference to a reasonable certainty;* and, in the absence of at least such inference, there is no sufficient basis for a finding of fact." [Wis. J.I.— Civil No. 1740] (Emphasis added.)

After the trial court had informed counsel that it intended to give the instructions quoted above, the parents requested that the court adapt these instructions to the standard set forth in *McGonegle, Nordahl,* and *Redepenning* by adding after the words "by the greater weight of the credible evidence to a reasonable certainty" the words "as the circumstances may permit," and by adding after the "no speculation" portion of the instruction the following statement, based upon *Redepenning v. Dore, supra:*

"The law does not require that there be exacting testimony to the value of the pecuniary loss. You are not held to any fixed and precise rule in fixing the amount of these damages, but can compensate pecuniary losses or injuries from such amounts that find reasonable support in the evidence and are based upon your common knowledge and judgment."

The trial court refused the parents' suggested modifications.

During the course of its deliberations, the jury returned to the courtroom to ask the court to explain the meaning of pecuniary loss "and how we are to arrive at a figure, if any." The trial court re-read Instruction No. 1890 and then inquired whether the jury would find it helpful if the reporter transcribed the instruction so that the jury could have copies to look at. The foreman responded, "Yes, it will help." After the jury had retired, the defendants asked the trial court to reinstruct the jury pursuant to Instruction No. 1740 and requested that this instruction, too, be transcribed and given to the jury. Over the parents' objection that the jury

had "asked no question about burden of proof; and certainly to repeat [the speculation instruction] in connection with the jury's inquiry here would be prejudicial, overemphasizing something that we have already expressed our objection to," the trial court recalled the jury, re-read Instruction No. 1705 and No. 1740, and had copies of these instructions sent into the jury room.

The parents argue on appeal that "[i]t was prejudicial enough that these instructions overstating plaintiffs' burden of proof were given to the jury *once.* . . . [But] [t]here could hardly be more emphasized and compounded repetitions of error" than calling the jury back into the courtroom and "with all of the emphasis necessarily attended by these circumstances," rereading Instructions 1705 and 1740.

We hold that the trial court erred in instructing the jury pursuant to Instructions No. 1705 and No. 1740. In view of this court's statements in *McGonegle* that verdicts relating to post-maturity pecuniary loss are not to be placed "on a plane with the ordinary verdict so far as the degree of certainty required to sustain the verdict is concerned," and that such verdicts "must rest to a large degree in conjecture, from the very necessities of the case," Instructions 1705 and 1740 overstate the certainty with which the parents were required to establish pecuniary loss. In contrast, Instruction No. 1890 properly permits the jury to assess post-maturity pecuniary loss in an amount the parents "could reasonably have expected to receive from the child's contributions . . . if it appears from the evidence that the parent[s] would have received pecuniary benefits from the child after [the child] reached the age of 21."

If the trial court wished to give the jury the above quoted portions of Instructions 1705 and 1740, the trial

court should have incorporated the parents' requested modifications. The requested modifications "would have tended to restore a proper balance to instructions which were unduly favorable to defendant[s]." *Weggeman v. Seven-Up Bottling Co.*, 5 Wis.2d 503, 517, 93 N.W.2d 467, 94 N.W.2d 645 (1958).

### III.

The statutory limitation on the recovery of damages for loss of society and companionship was at the time of the accident which gave rise to this action $3,000. The parents argue that they were prejudiced by defense counsel's suggestion during final argument that the jury assess amounts in excess of the $3,000 statutory limit for the loss of society and companionship.

Before final argument and in the absence of the jury, the parents asked the trial court to rule that it would either (1) instruct the jury that there was a $3,000 statutory limit on recovery for the loss of society and companionship, or (2) estop the defendants from asserting the limit, if, during the course of final argument, defense counsel suggested to the jury that they should assess for the loss of society and companionship amounts in excess of the statutory limit.

Although the trial court refused to rule as the parents had requested, it did ask counsel for both the parents and the defendants to refrain from mentioning a specific sum in connection with recovery for the loss of society and companionship. This request was ignored. Counsel for the parents suggested during final argument that:

"The loss of society and companionship is a grave loss and the evidence has demonstrated that here. I ask you, ladies and gentlemen, that in subdivision (b) for each of the boys that you confine the amount in that subdivision for each boy to $3,000."

Defense counsel stated during his final argument:

"... And this I think, and this is just my opinion, that when answering the loss of society and companionship phase of the question, that the sum of $10,000 would be reasonable and adequate to compensate the parents for this unknown, this anticipated loss; and I would recommend to you that, if I were a juror—and I have only one opinion to voice and I am not a juror—that I would insert the sum of $10,000. You may or may not agree with my conclusion .... You might say it is $5,000; you might say it is $15,000."

Counsel for the parents again urged a $3,000 figure during rebuttal argument:

"[Defense counsel], in his comment on the loss of society and companionship mentioned that he thought that that was $10,000. For a good reason, members of the jury, we believe, we ask that the amount be confined to $3,000."

Following final arguments, the parents again moved the trial court to advise the jury of the $3,000 statutory limit, but they did not move for a mistrial on the basis of defense counsel's closing argument. The trial court denied the parents' motion.

The parents maintain here, as they did before the trial court, that by suggesting awards in excess of the statutory limit, defense attorneys routinely "mislead juries into 'loading' the substantial part of their damage awards into their finding on loss of society and companionship . . . thereby causing them to decrease or not make an award for pecuniary loss." The parents claim in their brief that this practice is so widespread that "[s]ome trial lawyers almost routinely waive the claim for loss of society and companionship to prevent the incurable misleading of the jury this argument is intended to effect." Implicit in the parents' argument is the notion that the jury was not likely to follow the trial court's instructions. Were the jury to act pursuant to those instructions, a high award for the loss of society and

companionship would have no effect upon the sum to be awarded for pecuniary loss. These are separate damage categories, and the jury was given separate instructions with respect to each.[5] The argument that a high award for loss of society and companionship will be accompanied by a low award for pecuniary loss must be predicated upon an assumption that jurors are likely to determine that a plaintiff should be awarded some particular lump sum—a sum which they will subsequently divide among the damage categories listed in the verdict.

[7]

The defendants point out that we need not consider the parents' objection to defense counsel's final argument. The parents waived their right to contest that argument on appeal, assert the defendants, because they failed to move for a mistrial before the jury returned its verdict. In a continuing line of cases this court has held that it will not review as a matter of right an allegedly improper

---

[5] The instructions relating to damages for loss of society and companionship were as follows:

"Subdivision (b) in each of the three questions makes inquiry as to what sum will reasonably compensate the plaintiffs for loss of society and companionship of their child. You will carefully consider all of the credible evidence and reasonable inferences therefrom bearing on this inquiry, and in answer name such sum as will fairly and reasonably compensate them for the loss of the society and companionship of their deceased son.

"You should take into consideration the ages of both the deceased child and the parents. You should also consider the relationship of the parents and their child, the love and affection and conduct of each towards the other; the society and companionship that was afforded to the parents by their child; the personality, disposition, and character of the child; the disposition and susceptibility of the parents to suffer from such loss; and name an amount which will in your judgment reasonably compensate the parents for such loss as they have sustained by being deprived of such society and companionship as their child afforded them during his lifetime and which you are reasonably certain would have continued during the natural life of the parents except for the death of their child."

closing argument where the objecting party did not move for a mistrial on the basis of the claimed impropriety before the jury returned its verdict. *Zweifel v. Milwaukee Automobile Mut. Ins. Co.*, 28 Wis.2d 249, 256, 137 N.W.2d 6 (1965); *Ash v. American Family Mut. Ins. Co.*, 33 Wis.2d 592, 601, 148 N.W.2d 58 (1967); *Wagner v. American Family Mut. Ins. Co.*, 65 Wis.2d 243, 249, 222 N.W.2d 652 (1974); *Nietfeldt v. American Mut. Liability Ins. Co.*, 67 Wis.2d 79, 88–89, 226 N.W.2d 418 (1975). Because the parents failed to move for a mistrial, they cannot appeal as a matter of right the claimed impropriety of defense counsel's final argument. Nonetheless, because the trial court,[6] counsel for the parents, and

[6] In ruling on the parents' motion that it inform the jury of the statutory limit or estop the defendants from asserting that limit if counsel for the defense suggested an award for loss of society and companionship in excess of the statutory limit, the trial court stated, in part:

". . . The matter that we are discussing is one that I have heard discussed since I have been involved with the law. And so for over forty years I have heard this same issue discussed by lawyers and judges. It is very apparent that, and the Supreme Court has so indicated, that this is a matter with regard to these limits for the legislature. The legislature has carefully reviewed these statutes and has seen fit to increase limits from time to time; and since this particular unfortunate accident occurred, they have increased the limit for loss of society and companionship from $3,000 to $5,000. When I was practicing law and I represented a plaintiff, I took one position. And when I represented a defendant, I took another position. This is the same thing that attorneys are still doing. I don't blame them for it. On the other hand, attorneys for the defendants in this kind of situation, knowing that it is almost a foregone conclusion that any jury under circumstances of this kind is going to bring in a figure in excess of the statutory limit, have various ways of approaching this in a jury argument. I hope, so that there will be no problem, that we don't discuss amounts with regard to what an award should be for loss of society and companionship. I have heard over the years, and the Supreme Court records will show, that attorneys have urged that this is the area of loss and that this is where you make the award. That is the position of

counsel for the defendants all appear to concede that defense attorneys routinely include in their closing arguments the suggestion that the jury assess for the loss of society and companionship a higher sum than the law allows to be recovered, we think it important to exercise our discretion to review the parents' objection.

Defendants properly assert that this court permits trial counsel to suggest a dollar amount of damages which counsel believes the evidence will fairly and reasonably support. *See Affett v. Milwaukee & Suburban Transport Corp.*, 11 Wis.2d 604, 614, 106 N.W.2d 274 (1960); *Walker v. Baker*, 13 Wis.2d 637, 651, 109 N.W.2d 499 (1961); *Doolittle v. Western States Mut. Ins. Co.*, 24 Wis.2d 135, 143, 128 N.W.2d 403 (1964); *Fischer v. Fischer*, 31 Wis.2d 293, 301, 142 N.W.2d 857 (1966). A two-fold basis underlies the rule allowing counsel to suggest a monetary award: the function of advocacy requires that the attorney be given reasonable latitude to point out to the jury the conclusions or inferences which he or she feels can be reasonably drawn from the evidence; and it is important that the jury be given some guidance in determining what cash award the evidence will support, for no established or readily ascer-

---

the defendant's attorneys. The position of the plaintiffs' attorneys in arguing to the jury has been, well, this is not really the area of real loss; while, of course, they miss them, but this is where— this can be a nominal figure, and they usually recommend a figure, either the statutory limit or something close to it; and then go on to justify the rest of it by arguing for a big figure on the other side. If this is reprehensible, if it is wrong, if it is improper, I feel you have got to look at both sides of the coin. And, of course, as always, depending on how it comes out, this is thrown into the lap of the Trial Judge on motions after verdict, and that something should be done; and then the Supreme Court gets it. So, I think that this is a proper—that this is a situation where a Trial Judge should not, and I will not, interfere during the time you have your jury argument; I will under no circumstances advise the jury what the limits are with regard to these items."

tainable market value fixes the price to be put upon injuries such as pain and suffering or loss of society and companionship.[7]

It is made obvious to the jury that when the lawyer argues damages in terms of a cash amount, he or she is expressing an opinion rather than giving evidence. The jury in the case at bar was instructed, not once but twice, as to the weight to be given to opinions of counsel:

"The amount to be inserted by you in answer to each damage question is for you to determine from the evidence. What Counsel ask for in their arguments is no criterion or measure of the damages sustained. The opinion or conclusion of Counsel as to what damages should be awarded should not influence you unless it is sustained by the evidence. Examine the evidence, carefully and dispassionately, and determine your answers from the evidence in the case.

". . .

"You should consider carefully the arguments of Counsel insofar as such arguments are based upon the evidence and insofar as such arguments will assist you in arriving at a just verdict. But the arguments and statements of Counsel and their conclusions and opinions are not to be considered by you as evidence in this case. It is you duty to draw your own conclusions and your own inferences from the evidence and to decide upon your verdict according to the evidence and under the instructions concerning the law as given to you by the Court."

This court has repeatedly expressed its faith in the jury system and the ability of jurors to discern absurdities presented to them. In *Fischer v. Fischer*, 31 Wis.2d 293, 302, 142 N.W.2d 857 (1966), we stated:

"If the attorney argues to the jury that a certain figure is sustained by the evidence, neither his good faith

---

[7] For cases discussing the propriety of counsel suggesting the amount of the award, *see* Annot., *Propriety & Prejudicial Effect of Reference by Plaintiff's Counsel, In Jury Trial of Personal Injuries or Death Action, To Amount of Damages Claimed or Expected by His Client,* 14 ALR3d 541 (1967).

nor his ethics should be subjected to posttrial challenge . . . . We reiterate our faith in the jury's ability to discern or reject extremes in the appraisal of damages, and we conclude that if trial counsel are permitted to express their own subjective advocate's appraisal of damages that demands completely unsupported by evidence will be rejected by the jury. The probability of a 'backfire' in the event of an unreasonable demand is likely to make this phase of trial advocacy self-policing." 31 Wis.2d at 302.

■

We are therefore unwilling to conclude that counsel in wrongful death actions cannot argue to the jury the dollar amount of damages for loss of society and companionship which counsel believes the evidence will fairly and reasonably support.

The parents nonetheless voice a legitimate concern. If indeed the purpose of defense counsel's final argument was to induce the jury to "load" its damage award heavily on the loss of society and companionship, it is clear that neither of the factors found to support the propriety of a lump-sum argument in *Fischer*—namely counsel's good faith and the probability of "backfire"—is applicable within the instant context. It cannot be assumed that defense counsel's suggestion of a high award for the loss of society and companionship was made in good faith. If that suggestion is to be taken at face value, it must be read as an argument inimical to his own client's best interests. If, on the other hand, counsel's suggestion was in his client's best interests, can it be said to have been made in good faith? Moreover, defense counsel's argument is not likely to "backfire," for this is not a situation in which counsel's motives are transparent in the light of common sense. Indeed common sense may dictate a larger recovery for loss of society and companionship than for pecuniary loss. We note, therefore, that within the context of recovery of damages for the loss of society and companionship of one who was wrongfully

killed, allowing counsel to make a lump sum argument is *not* a self-policing phase of trial advocacy.

We believe that this potential for misleading the jury can be minimized by the trial court's instructing the jury that the legislature has imposed a limitation on the recovery of damages for loss of society and companionship and by the trial court's telling the jury of the specific dollar limitation prescribed. Courts which have considered the propriety of an instruction mentioning a specific sum as the limit of recovery are divided on the issue.[8] The usual arguments against allowing the jury to be told the dollar limitation are that the jury may give this dollar figure too great weight since it comes from the legislature and the bench and that the jury is likely to believe that the amount stated in the instruction measures rather than limits the permissible recovery. We believe that these potential difficulties can be overcome. Any danger that the jury will be misled by being informed of the statutory limit can be dissipated by an instruction similar to the instruction which warns the jury that counsel's argument is not to be taken as evidence. The instruction in the case at bar should advise the jury that the wrongful death action is granted by statute; that the statute permits recovery for pecuniary injury and for loss of society and companionship; that recovery for pecuniary injury of a person wrongfully killed is limited by the statute to the maximum amount of $35,000; that recovery for loss of society and companionship of a child is limited by the statute to the maximum amount of $3,000; that the statutory figure is not a measure of damage, but only a limit above which the jury cannot go; and that the jurors must exercise their own best judgment in determining the damages suffered by reason of pecuniary injury and loss of society and

---

[8] *See* cases cited in Annot., *Instruction Mentioning or Suggesting Specific Sum as Damages in Action for Personal Injury or Death,* 2 ALR2d 454 (1948).

companionship.[9] *See Deming v. City of Chicago,* 321 Ill. 341, 151 N.E. 886, 887 (1926); *Warnes v. Champaign County Seed Co.,* 5 Ill. App.2d 151, 124 N.E.2d 695, 697 (1955); *Shepard v. Harris,* 329 S.W.2d 1, 8 (Mo. 1959). To the extent that *Schulz v. General Casualty Co.,* 233 Wis. 118, 288 N.W. 803 (1939), is inconsistent with this decision, *Schulz* is overruled.

In the context of this case, the argument posed against allowing the jury to be told of the low dollar limitation on recovery for the loss of society and companionship is that the jury will "balance this factor" and increase its assessment of the damages for pecuniary loss. We are not persuaded that jurors are to be expected to pay no heed to the instructions of the trial judge. Pecuniary injury and loss of society and companionship are separate damage categories, and the jury is given instructions with respect to each.

It is a basic tenet of our system of government that decisions are based on law, not personal whim. The jury verdict also must be a decision based on the law. If the jury ignores the instructions as to the applicable legal rules the jury becomes in effect the legislature and its decision depends entirely on uncontrolled, arbitrary discretion, not legal principle. Nevertheless, devotees of the jury system praise it precisely because the jury, in the privacy of its retirement, can adjust the general rule of law to the justice of the particular case. It is because our system values the application of the general rule to each case, and at the same time justice in the particular case, that the controversy persists as to how the jury best performs its role.[10]

---

[9] The limitations of $35,000 and $3,000 were in effect at the time of the accident which gave rise to this action. *See* Note 1, *supra.*

[10] For a discussion of the function of a jury, *see, e.g., Skidmore v. Baltimore O. & R. Co.,* 167 F.2d 54 (2d Cir. 1948).

We conclude that jurors faced with the difficult task of determining what specific sum (within the range of sums which can be considered reasonable and appropriate) should be awarded as compensation for these injuries can function best if they have the maximum amount of helpful information available. Thus the jurors should have the benefit of counsel's argument on damages and should be informed by the court of the statutory limits on damages. The jury should not be allowed to determine a verdict based on ignorance, speculation, or false assumptions, caused in part by final arguments which attempt to induce the jury to "load" the damages awards one way or other. Should the trial court, or the appellate court on review, determine that the jury's awards were inappropriate, remedy is available. We hold, therefore, that the trial court should, in a wrongful death action, inform the jury of the statutory limitations on recovery, if any.

Because of the combination of defense counsel's improper final argument and error by the trial court in instructions, we exercise our discretion under sec. 251.09, Stats., and order a new trial on the issue of damages. It appears to us that the real controversy has not been fully tried and that justice has probably miscarried.

*By the Court.*—Judgment reversed and cause remanded for proceedings not inconsistent with this opinion.